IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO HORSEMEN'S ASSOCIATION,

    Plaintiff,

v.                                                      Case No. 1:21-cv-0592-JHR-KK

SAM BREGMAN, in his individual capacity,
JOHN BUFFINGTON, in his individual capacity,
DAVID "HOSSIE" SANCHEZ, in his individual capacity;
BILLY G. SMITH, in his individual capacity;
all Commissioners of the NEW MEXICO RACING
COMMISSION, a part of the Tourism Department of
the State of New Mexico; and
THE NEW MEXICO RACING COMMISSION,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ALL STATE CLAIMS

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss All State Law Claims (Counts 5, 6, 7, 8 & 9) in Plaintiff's Amended Complaint ("Motion") (Doc. 18). Defendants seek dismissal of Plaintiff New Mexico Horsemen Association's ("Plaintiff") five state law claims for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) based on immunity under the New Mexico Tort Claims Act ("NMTCA") and because the relevant conduct occurred before the effective date of the New Mexico Civil Rights Act ("NMCRA"). Doc. 18 at 4–6. Plaintiff responds that Defendants are law enforcement officers under the NMTCA, which renders them subject to suit, and that the future races from which Plaintiff will be unable to collect its membership fees resolve the timing issues under the NMCRA. Doc. 32 at 9–10. Having reviewed the parties' submissions and the applicable law, the Court finds that the Motion (Doc. 18) is well-taken and therefore GRANTS it.

## BACKGROUND[1]

Plaintiff is a nonprofit corporation, the aim of which is "to actively promote the general welfare and health of licensed owners, trainers, and grooms (the Horsemen) who race in the State of New Mexico." Doc. 4 ¶ 11. Membership in this organization requires a fee of 1% of all monies won in a horse race and a total of $7 for each live racing start—$5 for a medical fund and $2 for a political action committee. *Id.* ¶ 15. New Mexico racehorse owners who do not wish to be members of this organization may opt out in writing. *Id.* ¶ 12.

One of Plaintiff's roles is financial in nature. Plaintiff is responsible for maintaining a share of 20% of the net revenue from "racinos" (racetracks with a casino attached) in designated bank accounts for each track and disbursing those funds to the tracks for payment of race purses. *Id.* ¶¶ 13, 56. In horse racing, a "purse" is the fund of money for which the racers are competing. *See* Doc. 4-1 ¶ 4. In other words, Plaintiff serves as a custodian over 20% of the net revenue from the racinos, manages the accounts containing that revenue, and then disburses the funds as an award to the winners of the races. Doc. 4 ¶¶ 13, 17, 56. As compensation for serving as custodian over the accounts, Plaintiff receives 20% of the interest from these accounts as an administrative fee. *Id.* ¶¶ 18, 58. The quantity of purse money contained in the accounts that Plaintiff manages totals approximately thirty to forty million dollars annually. *Id.* ¶ 57. Nonetheless, the interest Plaintiff receives for managing these accounts does not cover the costs of managing them, so Plaintiff requires membership fees as discussed above. *Id.* ¶¶ 61–63.

Defendant New Mexico Racing Commission (the "Commission") is part of New Mexico's Tourism Department. *Id.* ¶ 27. It is a governmental body that regulates the horse racing industry.

---

[1] On this motion to dismiss under Rule 12(b)(6), the Court takes all factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1305 (10th Cir. 2020).

*Id.* ¶¶ 35, 37. The Commission passed a regulation, N.M. Admin. Code 15.2.2(A)(11), which Plaintiff believed to be contrary to New Mexico law. *Id.* ¶¶ 66–67. Based on this belief, Plaintiff filed for a declaratory judgment against the Commission in New Mexico state court on December 2, 2020. *Id.* ¶ 67. Plaintiff also objected to other actions by the Commission, including, for example, changes or cancellations in the race meet schedule during the COVID-19 pandemic and the failure to demand that racetracks be kept in a safe and clean condition. *Id.* ¶¶ 73–76 (listing other grievances in addition to these). Because of this lawsuit, Defendant Chairman of the Commission Sam Bregman did not permit Plaintiff to contact the Commission or participate in Commission meetings except through its attorney. *Id.* ¶ 88.

Subsequently, on May 20, 2021, Defendants voted to pass an order that Plaintiff alleges removes a significant portion of its funding. *Id.* ¶ 77. Specifically, the order compelled Plaintiff to "take all action necessary to stop all processes in place by which the One Percent (1%) Purse Diversion, $5.00 Starter Fee, and $2.00 PAC Fee is transferred to and/or collected by the New Mexico Horsemen's Association." Doc. 4-1 at 3. The order explained that the Commission had not authorized diversion of these fees directly from purses to Plaintiff, and as a result it passed a motion "prohibiting the New Mexico Horsemen's Association from continuing to take from gaming tax revenue legislatively mandated solely for purses" the membership fees. *Id.* at 2–3 ¶ 8. Plaintiff alleges that this order misapprehends the process by which Plaintiff takes its membership fees; rather than taking the fees directly from purses, Plaintiff takes the fees from the money allocated to each racer after winning. Doc. 4 ¶ 89.

Plaintiff alleges that Defendants passed this order with the aim to decrease Plaintiff's funding in retaliation for Plaintiff's lawsuit and objections to Defendants' conduct. *Id.* ¶ 102. In addition to claims under federal law addressed in the Court's earlier Memorandum Opinion and

3

Order (Doc. 41), Plaintiff alleges five state law counts: Count 5 for abuse of process under the NMTCA; Count 6 for libel, slander, and defamation; Count 7 for free speech violations under the New Mexico Constitution; Count 8 for denial of property rights; and Count 9 for violations of the NMCRA.[2] *Id.* ¶¶ 199–250.

Defendants seek dismissal of these five counts under Rule 12(b)(6). Doc. 18. They make two main arguments in support of this point: that the NMTCA does not waive sovereign immunity to allow Plaintiff's state claims against them, and that the NMCRA did not take effect until July 1, 2021, which is after the May 20, 2021 board meeting and order prohibiting Plaintiff's automatic membership fee withdrawals. Doc. 18 at 4–6. Plaintiff responds that Defendants are law enforcement officers for whom the NMTCA waives sovereign immunity, and that Defendants acted to deprive Plaintiff of its property after the NMCRA took effect by preventing it from collecting funding at each race after July 1, 2021. Doc. 32 at 9–10.

**ISSUES**

The Court identifies the following major issues to be decided with regard to whether the Amended Complaint states a claim on its face:

1. Whether Defendants, as Commissioners of the New Mexico Racing Commission, are "law enforcement officers" within the definition of the NMTCA and therefore may be sued for tort claims; and

2. Whether Defendants' May 20, 2021 Order preventing Plaintiff from collecting its membership fees in the manner Plaintiff desired for races that took place after July 1, 2021 is an act or omission that may serve as the basis for an NMCRA violation.

---

[2] Plaintiff concedes that this count is not applicable to the individual Defendants. Doc. 32 at 19.

If Defendants' Order falls within the NMCRA's scope based on the Order's effect on post-July 1, 2021 races, the Court will then consider whether Defendants' alleged conduct violates the New Mexico Constitution's 1) property, 2) free speech, or 3) inherent rights protections.

## APPLICABLE LAW

### I. Motion to Dismiss

Rule 12(b)(6) allows a party to move to dismiss a case for failure to state a claim upon which relief can be granted. When ruling on such a motion, a court looks to the complaint, accepts all well-pleaded factual allegations therein, and construes them in the plaintiff's favor to the extent possible. *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1304 (10th Cir. 2020). However, a court need not accept legal conclusions unadorned by factual support. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the plaintiff must put forth facts stating a claim to relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility, while more than possibility, does not need to reach the level of probability. *Id.*

### II. Sovereign Immunity and the NMTCA

The State of New Mexico's governmental bodies and employees enjoy sovereign immunity from suit except as explicitly waived in the NMTCA. *Tafoya v. New Mexico*, 517 F. Supp. 3d 1250, 1281 (D.N.M. 2021); NMSA § 41-4-4(A). One of the waivers of sovereign immunity in the NMTCA covers certain conduct by "law enforcement officers." NMSA § 41-4-12. The section defines a law enforcement officer as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." *Id.* In an earlier section of the NMTCA, the term "law enforcement officer" is defined as "a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer

employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." *Id.* § 41-4-3(D).

## ANALYSIS

I. **Whether Defendants are "Law Enforcement Officers" under the NMTCA**

The parties first dispute whether the NMTCA's waiver of sovereign immunity for "law enforcement officers" applies to Defendants. Defendants argue that this section does not apply to them because they are officers of the New Mexico Racing Commission, not police officers. Doc. 18 at 5. Plaintiff responds that Defendants have certain law enforcement capabilities, such as hiring security guards and issuing fines, that qualify them as law enforcement officers for the purposes of the NMTCA. Doc. 32 at 20–22.[3]

The NMTCA's definition of law enforcement officers is not an expansive one. In NMSA § 41-4-12, which contains the law enforcement officer exception, a law enforcement officer is defined as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." Plaintiff's arguments focus on this definition, and Plaintiff emphasizes Defendants' role in maintaining order at racetracks by excluding or compelling the attendance of particular individuals, investigating racetrack compliance with the Horse Racing Act, and employing staff with basic law enforcement training so long as they do not carry firearms while on duty. Doc. 32 at 21.

---

[3] Plaintiff also argues that resolution of this question is premature at the motion to dismiss stage. Doc. 32 at 20. The Court disagrees. Other cases have resolved the question of NMTCA applicability at the motion to dismiss stage. *See, e.g., Vigil v. Martinez*, 1992-NMCA-033, 832 P.2d 405; *Williams v. Bd. of Regents of Univ. of N.M.*, 20 F. Supp. 3d 1177 (D.N.M. 2014); *Lymon v. Aramark Corp.*, 728 F. Supp. 2d. 1222 (D.N.M. 2010).

As important to maintaining order as these functions may be, however, the NMTCA clarifies in its definitions section that not all officials tasked with maintaining order qualify as "law enforcement officers" for the purposes of § 41-4-12:

> . . . 'law enforcement officer' means a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

NMSA § 41-4-3(D). Maintenance of public order in this context refers to "the sense that police officers, sheriff's deputies, and other traditional law enforcement officers are said to maintain public order." *Vigil v. Martinez*, 1992-NMCA-033, ¶ 18, 832 P.2d 405 (contrasting the maintenance of public order that probation and parole officers perform by rehabilitating clients, which does not qualify under the law enforcement waiver of sovereign immunity). Plaintiff makes no allegations that Defendants' principal duties are to hold accused criminals in custody, to maintain public order in the manner that traditional law enforcement officers do, or to make arrests for crimes.

Accordingly, the Court finds that Defendants are not law enforcement officers under the NMTCA and that they retain their immunity from suit. The Court therefore GRANTS dismissal of Counts 5 through 8. Count 9, however, must be addressed separately because sovereign immunity does not protect Defendants against suits under the NMCRA. *See* NMSA § 41-4A-9 (state of New Mexico waives sovereign immunity for NMCRA claims).

## II.   Whether Defendants "Acted" to Violate Plaintiff's Rights After July 1, 2021

The New Mexico Civil Rights Act, which serves as the basis for Count 9, took effect on July 1, 2021. This legislation has a purely prospective effect: "Claims arising solely from acts or omissions that occurred prior to July 1, 2021 may not be brought pursuant to the New Mexico

7

Civil Rights Act." NMSA § 41-4A-12. Defendants argue that this aspect of the NMCRA renders it inapplicable to Plaintiff's circumstances because Defendants enacted the Order at issue in this case on May 20, 2021, over a month before the effective date of the NMCRA. Doc. 18 at 6. Plaintiff responds that it alleged post-July 1, 2021 violations of the NMCRA: the withheld funding at each subsequent race. Doc. 32 at 10–12. Plaintiff draws the distinction, articulated in *Parker v. Bourdon*, 800 F. App'x 654, 657 (10th Cir. 2020), between ongoing unlawful conduct and ongoing harm. *Id.* at 12.

This distinction is critical, but it hinders Plaintiff's argument rather than helps it. The "continuing violation" doctrine permits recovery for an ongoing series of violations, some of which occurred within the relevant period. This doctrine permits recovery for "continuing unlawful acts" but not "continued damages from the initial violation." *Id.* (quoting *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017)). The continuing violation doctrine does not necessarily apply to every area of the law; for example, *Parker* itself only assumes without deciding that this doctrine might apply to a Section 1983 claim. *Id.* The parties in this case do not cite to any case law indicating whether this doctrine applies to the NMCRA, so the Court assumes without deciding that it does for the purpose of this analysis.

In *Parker*, the Tenth Circuit held that the plaintiff, who was required to register as a sex offender, did not undergo a new unlawful act every time he had to re-register. *Id.* Rather, the re-registration was a continuation of the initial registration requirement. *Id.; see also Colby*, 849 F.3d at 1280 (continued harm of not having seized property returned did not bring unlawful seizure into limitations period). It was, to use Plaintiff's framing, an act that led to ongoing harm, but not an ongoing series of unlawful acts. Thus, even if the continuing violation doctrine applied to Section 1983 cases, it did not bring that plaintiff's claim into the statute of limitations at issue in that case.

At least one judge in the District of New Mexico has employed similar logic while addressing an NMCRA claim. *See Tucker v. Univ. of N.M. Bd. of Regents*, 2022 WL 3042970, at *4–5 (D.N.M. 2022) (rejecting NMCRA claim when conduct occurred before July 1, 2021, but harm from that conduct continued indefinitely after).

Defendants enacted the Order at issue in this case on May 20, 2021. Afterward, the racetracks complied, and are likely to continue to comply, with the Order by preventing Plaintiff from collecting funds in the manner it did beforehand. *See* Doc. 4 ¶ 250. However, the complaint does not allege that Defendants themselves took any new actions after issuing the Order. Therefore, any alleged harm to Plaintiff derives from Defendants' actions on May 20, 2021. The future harm would be the racetracks' continued compliance with that law, not further actions Defendants took after the NMCRA came into effect. Accordingly, even assuming without deciding that the continuing violation doctrine applies to the NMCRA, the continuing violation doctrine would be inapplicable here. The NMCRA does not apply to Plaintiff's claims, and the Court must dismiss Count 9.

## CONCLUSION AND ORDER

The Court dismisses Counts 5, 6, 7, and 8 because the NMTCA does not waive sovereign immunity for those claims against Defendants. The Court dismisses Count 9 because the NMCRA does not cover Defendants' pre-July 1, 2021 conduct and the alleged losses of membership dues subsequent to July 1, 2021 are merely harms that continue from this earlier conduct, not new violations within the NMCRA's scope. As a result, the Court **GRANTS** the Motion (Doc. 18) in its entirety and **DISMISSES** all state claims in this case.

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE