UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

NEW MEXICO HORSEMEN'S ASSOCIATION,

    **Plaintiff**,

vs.　　　　　　　　　　　　　　　　　　　　　　　No. 1:21-cv-00592-JHR-KK

NEW MEXICO RACING COMMISSION,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND REQUIRING A REVISED AMENDED COMPLAINT**

    This matter comes before the Court on Plaintiff New Mexico Horsemen's Association's Motion to Amend Complaint filed on December 7, 2022. [Doc. 52]. The New Mexico Racing Commission responded [Doc. 53] and the Horsemen's Association replied [Doc. 54]. The Horsemen's Association moves to amend its Amended Complaint [Doc. 4] in line with the Court's previous rulings dismissing certain counts. For the reasons below, the Motion to Amend is granted but the Horsemen's Association must file a revised proposed Second Amended Complaint.

**BACKGROUND**

    The Horsemen's Association is a nonprofit corporation whose membership requires a fee of one percent of all monies won in a horse race and a total of seven dollars for each live racing start (five dollars for a medical fund and two dollars for a political action committee). [Doc. 4, pp. 4-5]. Finance management is part of the Horseman's Association duties. The Horseman's Association maintains a share of twenty percent of the net revenue from "racinos" (racetracks with a casino attached) in designated bank accounts for each track and disburses those funds to the tracks for payment of race purses. *Id.* at. 4, 14. A "purse" in horse racing is the "money pot" for which the racers compete. [Doc. 4-1, p. 2].

1

In other words, the Horsemen's Association serves as custodian for over twenty percent of the net revenue from the racinos, manages the accounts containing that revenue, and then disburses the funds as awards to the race winners. [Doc. 4, pp. 5, 6, 14]. As an administrative custodial fee, the Horsemen's Association receives twenty percent of the interest from these accounts. *Id.* at 6, 14. However, the Horsemen's Association still requires its membership fees because the interest payments do not cover the management cost. *Id.* at 14-15.

The Commission is a governmental entity under the New Mexico's Tourism Department that regulates the horse racing industry. *Id.* at 7-9. The crux of this dispute is a regulation the Commission passed, N.M. Admin. Code 15.2.2(A)(11), which the Horsemen's Association alleges runs afoul of New Mexico law. *Id.* at 15. Based on this belief, the Horsemen's Association filed a state law declaratory judgment action against the Commission on December 2, 2020. *Id.* The Horsemen's Association also objected to several discrete Commission actions. *Id.* at 20. Because of the state court lawsuits, Commission Chairman Bregman did not allow the Horsemen's Association to contact the Commission or participate in meetings except through its attorneys. *Id.* at 23.

On May 20, 2021, the Commission issued an order which the Horsemen's Association alleges removes a significant portion of its funding. *Id.* at 21. The order specifically compelled the Horsemen's Association to "take all action necessary to stop all processes in place by which the One Percent (1%) Purse Diversion, $5.00 Starter Fee, and $2.00 PAC Fee is transferred to and/or collected by the New Mexico Horsemen's Association." [Doc. 4-1, p. 3]. The order explained that the Commission had not authorized diversion of these fees directly from purses to the Horsemen's Association, and as a result the Commission "prohibit[ed] the New Mexico Horsemen's Association from continuing to take [its membership fees] from gaming tax revenue legislatively

mandated solely for purses." *Id.* at 2–3. The Horsemen's Association alleges that this order misapprehends its membership fee process. [Doc. 4, p. 23]. The Horsemen's Association alleges that the Commission acted to decrease the Horsemen's Association funding in retaliation for its lawsuit and objections to the Commission's conduct. *Id.* at 26.

The Court has issued two prior rulings disposing of all but one claim in the First Amended Complaint. *See* [Docs. 41, 43]. The first order dismissed all federal claims for failure to state a claim except for the First Amendment retaliation claim against the Commission. [Doc. 41]. That ruling also dismissed the retaliation claim against all individual Defendants based on qualified immunity. *Id.* The second order dismissed all state law claims in the First Amended Complaint. [Doc. 43]. The Horsemen's Association filed this Opposed Motion to Amend Complaint within a month after the Court issued the second order. *See* [Docs. 43, 52]. The Commission filed a second Motion to Dismiss for lack of subject matter jurisdiction on June 14, 2023, arguing that the First Amendment retaliation claim that survives is moot because injunctive relief is unavailable for that claim. *See* [Doc. 62]. The Court will not resolve that Motion to Dismiss in this Order.

## LEGAL STANDARD

If the circumstances for amendment as a matter of course no longer exist, the Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The U.S. Supreme Court has interpreted this to mean leave to amend should be freely given absent:

> Undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.

3

*Foman v. Davis*, 371 U.S. 178, 182 (1962). A court abuses its discretion when it denies leave to amend without giving a justifiable reason. *Id*.

## ANALYSIS

The Horsemen's Association attached to its Motion to Amend a fifty-page proposed Second Amended Complaint for 42 U.S.C.A. Section 1983 First Amended Retaliation Claim. *See* [Doc. 52, pp. 5-55]. The Second Amended Complaint restates the surviving First Amendment retaliation claim against the Commission. *See* Docs. 41, 43. However, it does so in a sprawling manner replete with block quotes of statutes and regulations as well as historical information irrelevant to the merits of the claim.[1] *See, e.g., id.* at 10-14, 18-22, 25, 27, 32-33, 41-43. Thus, the Court will grant the Motion to Amend but require a revised proposed Second Amended Complaint.

The Commission opposes on two bases. *See* [Doc. 53]. First, the Commission contends that the proposed Second Amended Complaint impermissibly requests money damages which are unavailable for a First Amendment retaliation claim against a state entity. *Id.* at 3. Second, the Commission argues that the proposed Second Amended Complaint does not comply with Federal Rule of Civil Procedure 8. *Id.* at 4. The Commission states it "would not oppose an amended pleading that is clear and reasonably concise and does not attempt to revive claims this Court has already dismissed." [Doc. 53, p. 5].

The Horsemen's Association replies that the Commission is attempting to bait it into a "minimally pled" amended complaint "in an attempt to force [the Horsemen's Association] to violate the *Iqbal-Twombly* standard" and leaving it "vulnerable to dismissal under that standard." [Doc. 54, p. 4].

---

[1] While the year of the first recorded horse race in the United States is an interesting fact, it clearly does not bear on the merits of the claim. [Doc. 52, p. 7].

4

### A. The Horsemen's Association has leave to file a Second Amended Complaint.

The Court agrees with the Horsemen's Association that amendment is proper under Rule 15 and the *Foman* factors. The Horsemen's Association's proposed Second Amended Complaint is predicated on the Court's prior orders dismissing all counts except the First Amendment retaliation claim against the Commission. On its face, the proposed Second Amended Complaint pleads only this claim. The Court does not identify any undue delay or prejudice, bad faith, dilatory motive, repeated failure to cure deficiencies, or futility by allowing this amendment. *See Foman*, 371 U.S. at 182.

### B. The proposed Second Amended Complaint does not comply with Rule 8 and improperly revives dismissed damages claims.

However, the Court agrees with the Commission that the Horsemen's Association's proposed Second Amended Complaint does not comply with Rule 8, which provides:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . (1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."

Fed. R. Civ. P. 8(a). The "short and plain" pleading standard does not require detailed factual allegations and rejects the "hyper technical, code-pleading regime of a prior era." *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 150 (10th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79)). Rule 8 now frowns upon the old heightened pleading standard in favor of a "middle ground" approach balancing too much and too little detail. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 12 allows a court to strike immaterial matter from a pleading. Fed. R. Civ. P. 12(f).

The Horsemen's Association's briefing fails to directly address the "short and plain statement" requirement. *See* [Docs. 52, 54]. First, it argues that the Commission's "stylistic disagreements" with the proposed Second Amended Complaint violate Rule 1. [Doc 54, p. 3]. This argument is without merit. Rule 1 reads: "These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. However, the Horsemen's Association does not convince the Court that streamlining the proposed Second Amended Complaint violates Rule 1.

The Horsemen's Association pivots back to Rule 8 to assert that "Rule 8 parallels the *Iqbal-Twombly* standard" and "as a result, prolix, vague, or unintelligible pleadings violate the requirements of Rule 8." [Doc. 54, p. 4]. The Horsemen's Association then rounds the turn to conclude that the Commission's insistence on enforcing Rule 8 is "an attempt to force [the Horsemen's Association] to violate the *Iqbal-Twombly* standard," thereby rendering the Second Amended Complaint "vulnerable to dismissal." *Id.* This argument fails.

A First Amendment retaliation complex has simple elements: (1) the plaintiff was engaged in activity protected by the First Amendment; (2) the defendant acted in a way that injured the plaintiff and that would chill the activity of an ordinarily firm person; and (3) the defendant's action was substantially motivated in response to the plaintiff's protected conduct. *Nielander v. Board of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009). The previous amended complaint contained nine counts against four individuals and the Commission and was fifty-four pages long (not counting exhibits). [Doc. 4]. The proposed second amended complaint is limited to one claim, surviving from the previous, now limited to one defendant, yet is still forty-seven pages long (not counting exhibits). [Doc. 52, pp. 5-51]. Two-and-a-half pages recount the histories of horse racing in New Mexico and the operative racing and gaming statutes. *Id.* at 7-9. By the

Court's count, another six pages are extended block quotes from state statutes and a previous administrative regulation. *Id.* at 14-17, 22-23, 39. The First Amendment, § 1 of the Fourteenth Amendment, and 42 U.S.C. § 1983 are quoted in their entirety, though each is not entirely applicable, nor is it strictly necessary to quote rather than simply cite them. *Id.* at 18, 25.[2]

More important at this point in the procedural history of the case is the apparent attempt to revive damages claims that were expressly dismissed as a matter of law in the two prior orders. [Docs. 41, 43]. To the extent that the Horsemen's Association now tries to shift that load to the back of the Commission, it has not overcome the constitutional barrier to all but prospective injunctive relief against a sovereign state in federal court. *See* [Doc. 53, pp. 3-4] (citing *Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Chamber of Commerce of the United States v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010)). The Horsemen's Association does not meet that argument in its reply. In the absence of contrary authority, the Court's previous dismissal of claims for money damages is the law of the case. *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1279 (10th Cir. 2010); *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (listing exceptions not applicable here).

**C. The Horsemen's Association must submit a revised proposed Second Amended Complaint.**

This District has required refiling a complaint for noncompliance with Rule 8. *See Lowrey v. Sandoval Cnty. Child., Youth & Fams. Dep't*, No. 1:22-CV-00565-DHU-LF, 2023 WL 2499716, at *1 (D.N.M. Mar. 14, 2023). In *Lowrey*, U.S. Magistrate Judge Fashing reasoned that the

---

[2] Rule 8 expressly disfavors the sort of "detailed factual allegations" set forth in the proposed Second Amended Complaint. For example, *Iqbal* states that "code-pleading" no longer comports with modern pleading practice. *Iqbal*, 556 U.S. at 678-79. However, the Horsemen did precisely that by including extensive block quotes of statutes and regulations. Similarly, the Horsemen urge that the history of New Mexico horse racing is critical in order "to understand the central and crucial role [the Horsemen] ha[ve] played in horse racing in New Mexico and the sweeping implications of [the Commission's] misconduct." [Doc. 54, p. 4]. Even so, the pleading stage is not the right occasion for a lap through the state's equestrian history.

defendants could not "reasonably prepare responses because many of the allegations are not necessary to state a claim." *Lowrey*, No. 1:22-CV-00565-DHU-LF, 2023 WL 2499716, at *1 [Doc. 6] (citing *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Justice Cntr.*, 492 F.3d 1158, 1163 (10th Cir. 2007)). Instead of striking the complaint, Judge Fashing ordered the plaintiff to file an amended complaint not to exceed thirty-five pages. *Id.* at 3, 4.

The Court will follow suit and order the Horsemen's Association to refile the proposed Second Amended Complaint to comply with Rule 8. In its present form, the proposed amended complaint hinders the Commission from reasonably responding to the pertinent allegations. *See Lowrey*, 2023 WL 2499716, at *1. Moreover, the Commission does not oppose amendment so long as the new complaint is clear, concise, and only addresses the First Amendment retaliation claim. [Doc. 53, p. 5] (suggesting an amended complaint of fewer than ten pages).

## CONCLUSION & ORDER

It is undisputed that only the First Amendment retaliation claim against the Commission survived the prior rulings and serves as the entire basis for the Second Amended Complaint. Therefore, the Court will require the Horsemen's Association to submit a revised proposed Second Amended Complaint within certain parameters: **(1) not to exceed twenty (20) pages; (2) devoid of block quotes; (3) strictly limited to the remaining First Amendment retaliation claim; and (4) limited to two (2) pages of historical background.**

**IT IS THEREFORE ORDERED** that the Horsemen's Association's Motion to Amend Complaint [Doc. 52] is hereby **GRANTED** and the Horsemen's Association must **SUBMIT** a revised proposed Second Amended Complaint **within thirty (30) days of entry of this Order.**

**IT IS SO ORDERED.**

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE