UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**NEW MEXICO HORSEMEN'S ASSOCIATION,**

    **Plaintiff**,

vs.                                                                       **No. 1:21-cv-00592-JHR-KK**

**NEW MEXICO RACING COMMISSION,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING THE RACING COMMISSION'S MOTION TO DISMISS [DOC. 68] AND DISMISSING THE SECOND AMENDED COMPLAINT [DOC. 67].**

THIS MATTER is before the Court on Defendant New Mexico Racing Commission's Motion to Dismiss Plaintiff's (Second) Amended Complaint [Doc. 67] filed on August 18, 2023. [Doc. 68]. Plaintiff New Mexico Horsemen's Association filed a response [Doc. 69] and the Racing Commission replied. [Doc. 70]. The Court **GRANTS** the Racing Commission's Motion to Dismiss.

### I.     BACKGROUND

The Horsemen's Association is a nonprofit corporation for racehorse owners, trainers, and groomers funded by fees of one percent of all monies won in a horse race plus seven dollars for each live racing start (five dollars for a medical fund and two dollars for a political action committee). [Doc. 4, p. 4-5]. Managing those funds is part of the Association's duties. In addition, the Association served as custodian of a share of the net revenue from "racinos" (racetracks with a casino attached) maintaining designated bank accounts for each track and disbursing those funds

to the tracks for payment of race purses and other authorized expenses.[1] *Id.* at. 4, 14. The Association kept 20% of the interest earned on those accounts to pay part of its administrative expenses, *id.*, p. 4, with member fees covering the rest. *Id.*, at 14-15.

The Commission is a governmental entity under New Mexico's Tourism Department that regulates the horse racing industry. *Id.* at 7-9. In December 2020, the Association filed suit in New Mexico state court seeking declaratory relief against a 2007 regulation concerning insurance on racing jockeys. In retaliation, the Association alleges, in April or early May:

> The Chairman of the Commission, Sam Bregman, prohibited the Horsemen from being on the agenda and making any remarks about the motion and decision, as he had several weeks before prohibited the Horsemen from contacting the Commission, giving a report to the Commission and/or participating in Commission meetings or having any involvement with Commission staff and/or Commissioners except through their attorney because they had filed a Declaratory Judgment Action in the District Court of the State of New Mexico.

*Id.*, at 23.

Then, on May 20, 2021, the Commission issued an order ending the Association's collection of membership fees by direct diversion of collected racing revenues. *Id.* at 21. The Commission ordered the Association to "take all action necessary to stop all processes in place by which the One Percent (1%) Purse Diversion, $5.00 Starter Fee, and $2.00 PAC Fee is transferred to and/or collected by the New Mexico Horsemen's Association." [Doc. 4-1, p. 3]. The order explained that the Commission had not authorized diversion of these fees directly from purses to the Association, and "prohibit[ed] the New Mexico Horsemen's Association from continuing to take [its membership fees] from gaming tax revenue legislatively mandated solely for purses." *Id.* at 2–3. The Association argues that the Commission's order misapprehended the membership fee

---

[1] A "purse" in horse racing is the "money pot" for which the racers compete. [Doc. 4-1, p. 2].

process. [Doc. 4, p. 23]. The Association alleges that real motivation for the Commission action is retaliation for the Association challenging its improper conduct:

> The true motive behind the order/directive is to deprive the Horsemen of all or a large portion of funding and thus destroy the New Mexico Horsemen's Association because the Horsemen objected to racetracks using "purse monies" for operational expenses [insurance], Horsemen objected to the Commissioners canceling race meets and/or shortening race meets, Horsemen refused to pay from purse money the operational expenses of the racetracks, Horsemen were demanding racetracks keep the tracks and backsides in good, clean and safe condition and Horsemen were demanding written contracts for simulcasting, Horsemen raised objections and alerted the New Mexico Gaming Control Board of the issues and violations of the law and the Horsemen objected to the racetracks passing on certain operational costs to the Horsemen.

*Id.* at 26.

Since the Commission's order, the prohibition on diversion of racing revenue to pay membership fees was formalized in an administrative regulation, N.M. Admin. Code 15.2.2(A)(11). The Commission now argues that, alongside previous rulings of this Court, the enactment of the regulation moots or otherwise bars the Association's remaining arguments for relief. *See* [Doc. 68, p. 2].

## II.   PRIOR RULINGS IN THE CASE

The Court issued two prior rulings disposing of all but one claim in the First Amended Complaint. *See* [Docs. 41, 43]. That complaint raised issues under both federal and New Mexico law.  The first order found that the First Amended Complaint failed to state any federal claim but for the First Amendment retaliation claim against the Commission. [Doc. 41]. The first order then dismissed the retaliation claim against all individual Defendants based on qualified immunity. *Id.* The second order dismissed all state law claims. [Doc. 43]. The Court allowed the Horsemen to file a Second Amended Complaint alleging First Amendment retaliation against the Commission

3

and requesting permanent injunctive relief. [Doc. 66, 67]. The Commission filed the instant Motion to Dismiss shortly thereafter. [Doc. 68].

### III.     THE CURRENT MOTION TO DISMISS

The Commission's current motion seeks to dismiss the Association's Second Amended Complaint. *Id*.  The Commission summarizes the Association's arguments for injunctive relief seeking to reverse several allegedly retaliatory actions: ending the longstanding 1% diversion of purse money to the Association, requiring the Association to appear before the Commission only through legal counsel, removing the Association as purse money custodian, stopping racetracks negotiating simulcast agreements with the Association, and "unrecognizing" the Association through an administrative order.  *Id.* at 3-5. The Commission urges that the sought-after injunctive relief "is either not available to [the Association], has been mooted by regulation, or has already been/is being litigated in State Court." *Id.* at 5. The Commission explains why each Association argument is inapplicable or inapposite. *Id.*  at 5-11.

The Association contests the Commission's allegations and urges the Court to deny the motion because "the commission in this instance has taken every action . . . not for the public good but to retaliate against the Horsemen for revealing the wrongful conduct."  [Doc. 69, p. 6]. The Association says that it has shown the elements of retaliation including a proximal connection between the Association's activity and the Commission's responsive actions: "the Commission started retaliating shortly after the Petition for Declaratory Action was filed and before the Court had rendered a decision . . . [t]he commission has not stopped retaliating." *Id.*  at 10. The Association concludes that the Commission's conduct "is the height of nullification and mockery of United States Constitutional civil rights." *Id.*  at 14.

## IV. LEGAL STANDARDS

**A. Dismissal for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). On the other hand, the complaint must set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**B. Mootness of Claims and Finality of Previous Decisions**

"Injunctive relief requests are subject to Article III mootness." *New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 401 F. Supp. 3d 1229, 1319 (D.N.M. 2019) (citing *WildEarth Guardians v. Public Service Co. of Colorado*, 690 F.3d 1174, 1190-91 (10th Cir. 2012)); *State of N.M. ex rel. N.M. State Highway Dept. v. Goldschmidt*, 629 F.2d 665, 668-69 (10th Cir. 1980)). A case is moot when the issues "are no longer live or the parties lack a legally cognizable interest in the outcome." *Balderas*, 401 F. Supp. 3d at 1319 (internal quotation and citation omitted). Federal courts are

subject to doctrines of finality, such as res judicata, collateral estoppel, and *Younger* abstention. *See Braverman v. New Mexico*, No. CIV. 11-0829 JB/WDS, 2012 WL 5378290, at *18 (D.N.M. Sept. 26, 2012). These principles aim to conserve judicial and party resources and prevent inconsistent decisions between state and federal courts. *Balderas*, 401 F. Supp. 3d at 1290 (internal citations omitted). "A decision from a state court has the same preclusive effect in federal court as the decision would have in a subsequent state court action." *Id.* (using state law to decide if relitigating that issue or claim is precluded)

### C. *Younger* Abstention

Proper respect for the roles of state and federal courts requires that federal courts abstain from exercising jurisdiction where parallel state court proceedings can adequately address important state issues. *See Younger v. Harris*, 401 U.S. 37 (1971) (dismissing federal claims for equitable relief from pending state court proceedings). *Younger* abstention is designed to prevent interference through federal injunctive or declaratory relief when a pending state proceeding can provide adequate relief for constitutional claims. *See Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001).

The federal court should abstain when it is clear that (1) federal court action would interfere with a pending state court proceeding; (2) the state action involves important state interests; and (3) the state action provides an adequate opportunity to raise relevant federal claims. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999); *Sw. Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1177-78 (10th Cir. 2001). If those conditions are met, only extraordinary circumstances preventing a full and fair state hearing justify exercise of federal jurisdiction. *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989); *see also Taylor v. Jaquez*, 126 F.3d 1294, 1296 (10th Cir. 1998).

## V.     ARGUMENT

### A. The Association's requests to enjoin administrative orders are moot or otherwise discouraged by finality doctrines.

The Commission first contends that the Association's request to enjoin the 1% Diversion is moot because the relevant administrative order stopping the diversion "has been superseded by regulation." *Id.* at 5. The Association responds that the Commission enacted the regulation for the improper purpose of retaliation and not for the public good. [Doc. 69, p. 6].

The Association's retaliation claim addressing the 1% Diversion cessation order was presented to the state court on administrative appeal. *See* [Doc. 68-1] (D-202-CV-2021-03236). The state judge found for the Commission and dismissed the Association's appeal. *Id.* Noting that the Association did not seek money damages or invalidation of the subsequent regulation, the court held:

> "[N]o relief can be afforded to [the Association] because the current regulation has the same effect as the Administrative Order [the Association] challenges. The Court agrees with [the Commission], and further states that any issues regarding the recent amendments to the NMAC are not before this Court, and beyond the scope of this appeal. Because the Court agrees that there is no longer an actual controversy with regard to the Administrative Order, and the Court cannot grant any actual requested relief to [the Association], the case is moot.

*Id.* at 4. The Association fails to persuade the Court that that the 1% diversion controversy is not moot.

The Commission further argues that the *Younger* abstention doctrine bars the Court from considering the administrative order "unrecognizing" the Association as an organization. [Doc. 68, p. 10]. The Commission notes that the Association's appeal seeking to reverse this unrecognition order is currently pending in state court. *Id.* The Commission thus urges the Court to leave that issue untouched. The Association responds that *Younger* abstention should not apply where the "pending proceeding was motivated by a desire to harass or is conducted in bad faith."

7

[Doc. 69, p. 13].

The Court agrees with the Commission. The Association's argument is conclusory and fails to persuade; it effectively puts the cart before the horse by assuming that the Commission's order is retaliatory and harassing without having established such motive. The Association has made no showing that it cannot receive a full and fair hearing on that issue in the state court. The Court thus will abstain from considering the unrecognition order as a standalone issue.

**B. Permanent injunctive relief is unavailable because the Association cannot show actual success on the merits of the First Amendment retaliation claim.**

Notwithstanding the procedural barriers, permanent injunctive relief is substantively unsupported: the Association cannot state a claim for First Amendment retaliation against the Commission.

    i. <u>Legal Standards</u>

        *a. Permanent Injunction*

An injunction is an extraordinary equitable remedy intended to "prevent future violations and should be used sparingly." *Balderas*, 401 F. Supp. 3d at 1318 (internal citations and punctuation omitted). The district court's discretion over a permanent injunction request is "necessarily broad" and reversing it requires a "strong showing of abuse." *Id.* (internal citation and quotations omitted).

The Association must establish four elements: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs any harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003). A court will generally will not grant a permanent injunction until liability on the merits has been established. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007);

*SanMedica Int'l, LLC v. Amazon.com, Inc.*, No. 2:13-CV-00169-DN, 2016 WL 527055, at *13 (D. Utah Jan. 20, 2016) (finding a permanent injunction "inappropriate" because the "actual success on the merits element" was not satisfied); *see* 42 Am. Jur. 2d Injunctions § 18 (collecting cases).

### b. First Amendment Retaliation

To show that the Commission, a government entity, retaliated due to the Association's First Amendment exercise, the Association must show: (1) it was engaged in constitutionally protected activity; (2) the Commission's actions caused the Association to suffer an injury that would chill an ordinary person from continuing in the constitutionally protected activity; and (3) the Commission's adverse action was "substantially motivated as a response" to the Association's First Amendment exercise. *Van Deelen v. Johnson,* 497 F.3d 1151, 1155–56 (10th Cir. 2007).

### ii. The Association can show the first two elements of First Amendment retaliation.

The Court addressed this test in its previous order which dismissed all claims except First Amendment retaliation. *See* [Doc. 41]. The Court focused on the second element and stated that "a reasonable entity could feel chilled about its expression of free speech [the declaratory action lawsuit] if the response to that speech was to force it, without notice, to restructure its funding methodology" without the automatic 1% Diversion. *See id.* at 10.  The Court did not reach the other two elements and allowed the Association to proceed with the retaliation claim. *Id.* The Court has not changed its analysis and still finds that the Association meets the first and second elements of First Amendment retaliation.

### iii. The Association cannot show that the Commission's actions were substantially motivated as a response to the Association's protected activity.

However, the Association fails to fulfill the third element of showing that the Association's lawsuit substantially motivated the Commission's orders and regulation. This third element

requires the Association to show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place. *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998).

Generally, mere temporal proximity is not enough to establish that the protected activity substantially motivated the adverse action. *See Maestas v. Segura,* 416 F.3d 1182, 1189 (10th Cir. 2005); *Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014); *Milligan v. Archuleta*, No. 11-CV-00250-PAB-KLM, 2014 WL 7451085, at *2 (D. Colo. Dec. 31, 2014).  However, "close temporal proximity" may suffice; for example, "[a] six week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329, 1347 (D. Kan. 2023), *appeal dismissed sub nom. Douglass v. Swender*, No. 23-3027, 2023 WL 5179124 (10th Cir. Mar. 1, 2023) (citing *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004)). Nor do personality conflicts suffice. *See Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1127 (D. Colo. 2014), *aff'd*, 811 F.3d 349 (10th Cir. 2015) (concluding that the plaintiff "does nothing more than show that he and [defendant] Carlson had a significant personality conflict" leading to an arrest which the court deemed not retaliatory).

Conversely, courts have granted relief when defendants made statements evincing their retaliatory motivation. For example, statements like "today you get payback for suing us," "[defendants] Johnson and Miles are mad because you sued them," and "payback is hell, that's what she got for hiring a smart-ass lawyer" reasonably indicate substantial retaliatory motive. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1157–58 (10th Cir. 2007); *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir.1990).

On the facts presented, the Association fails to meet the third element because their argument relies on extended timelines and mere subject matter overlap insufficient to show that

10

the Association's lawsuit and general objections substantially motivated the Commission to stop the 1% diversion and other Association benefits.

First, the alleged retaliatory sequence occurred over several months and years. The Association filed its declaratory judgment action asking the state court to declare its rights to the 1% Diversion on December 2, 2020. *New Mexico Horsemen's Ass'n v. New Mexico Racing Comm. et al.*, D-202-CV-202006564, Second Judicial District (filing date Dec. 2, 2020). In May of 2021, over five months later, the Commission passed a motion to stop the 1% Diversion and enacted rule amendments to that end. [Doc. 67, p. 6]. In June of 2022, the Commission ordered the Association to turn over gaming money to the racinos, which the Association forestalled doing until July. *Id.*; [Doc. 68-3]. In January of 2023, the state court dismissed the Association's appeal of the Commission's order stopping the 1% Diversion because the regulation mooted the order and any live claim. [Doc. 68-1]. In the Second Amended Complaint, the Association allege further retaliation in 2023 when the racetracks stopped entering into simulcast agreements with the Association at the direction of the Commission. [Doc. 67, p. 9]. It also alleges that the Commission "unrecognized" the Association "as the association for horsemen in New Mexico" in retaliation. *Id.*

This series of events occurred intermittently over two years, which is too long to show retaliatory motive. Even the five-month time frame between the Association's declaratory judgment action (the protected activity) and the Commission's order and subsequent regulation (the triggering alleged retaliatory event) is too long to demonstrate that one was the consequence of the other. *See Douglass*, 652 F. Supp. 3d at 1329 (three months found too long to create a plausible retaliatory inference).

Second, the Association's arguments concerning this third element are conclusory and generalized. No statements indicating retaliatory intent have been alleged. Essentially, the Association believes that Commission actions contravening the Association's interest must be retaliatory. However, tit-for-tat exchanges could also be characterized as a soured business relationship, realignment away from "old guard" practices, a clash of conflicting political goals or interests, or an outsized battle of egos. All of these can occur as collateral consequences of litigation. More is required to persuade the Court that retaliation for First Amendment expression was a substantial motivation.

## VI. CONCLUSION

The Association's failure to meet the third element, that its actions substantially motivated the Commission's response, is fatal to the First Amendment retaliation claim. Because the standard for a permanent injunction requires actual success on the merits, failure to state a claim is fatal to the Association's claim for injunctive relief.

**IT IS THEREFORE ORDERED** that New Mexico Racing Commission's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 68] is **GRANTED**.

**IT IS FURTHERMORE ORDERED** that Plaintiff's Second Amended Complaint [Doc. 67] is **DISMISSED.**

**IT IS SO ORDERED.**

THE HON. JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE
PRESIDING BY CONSENT